**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**


**CIVIL ACTION NO. 09-939-C**

**MILLER TRUCK LINES, LLC,**                                                    **PLAINTIFF,**

**V.**                             **MEMORANDUM OPINION AND ORDER**

**CENTRAL REFRIGERATED**
**SERVICE, INC., ET AL.,**                                                 **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

Pending before the court are the parties' cross-motions for summary

judgment. For the reasons discussed below, the plaintiff's motion (R. 15) will be

granted in part and the defendants' motion (R. 16) will be denied.


### I. Facts

This case arises out of a March 18, 2008, motor vehicle accident between

two tractor trailers. The accident resulted in the death of David Thompson, who

was working for Miller Truck Lines, LLC at the time. Tammie Biebel was operating

the other vehicle for Central Refrigerated Service, Inc ("CRS"). The parties agree

that Biebel's negligence was the sole cause of Thompson's death.

The accident occurred in Jefferson County, Kentucky. Although both worked

throughout the country, Thompson was a resident of Indiana and Biebel was a

resident of Pennsylvania. Miller is an Oklahoma corporation, while CRS is a

Nebraska corporation with its principal place of business in Utah. Neither Miller nor

CRS has any offices or facilities in Kentucky.

Following the accident, Thompson's estate ("Thompson") pursued a claim for workers compensation benefits under the Oklahoma Workers Compensation Act. This claim was resolved pursuant to a Confidential Mediation Agreement entered into on July 28, 2008. R. 28. This agreement also resolved Thompson's claims against CRS and Tammie Biebel. Under the agreement, Miller agreed to pay Thompson $439,441.83 in workers compensation benefits and CRS agreed to pay him a "significant sum" disclosed to this court under seal. The Oklahoma Workers Compensation Court approved the settlement between Thompson and Miller on October 9, 2008. Although the agreement resolved all claims between Thompson and Miller and between Thompson and CRS, it specifically reserved all claims between Miller and CRS. The court is now called upon to resolve those claims.

## II. Analysis

The primary disagreement between the parties is the amount that CRS must pay to Miller on its claim for reimbursement. The parties agree that both Oklahoma and Kentucky require negligent third parties to reimburse workers compensation carriers that paid benefits to an injured employee. Their dispute is whether a set-off equaling the amount of legal fees Thompson spent prosecuting his claims should first be applied. If the set-off is applied, CRS could deduct Thompson's

$243,627.85 legal fees from the amount owed to Miller, potentially reducing the amount to zero. Because the parties agree on the relevant facts, the issue before the court is the legal basis for the set-off.

Whether the set-off should be applied depends on the applicability and interpretation of Kentucky and Oklahoma law. This court resolves these issues as follows: First, Oklahoma law, not Kentucky law, applies to this case. Second, because Oklahoma's workers compensation law makes no provision for such a set-off, CRS is not entitled to deduct Thompson's legal fees. Third, even if Kentucky compensation law applied, CRS is not entitled to the set-off because the relevant law does not apply to CRS.

### A. Oklahoma Law Applies

Oklahoma law applies to Miller's claim for reimbursement. Subrogation claims are considered contract cases for choice-of-law purposes, and Kentucky's choice-of-law rule requires application of Oklahoma law.

Federal courts hearing cases based on the diversity of the parties must decide which state's law to apply to the case. This requires an analysis of Kentucky's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Manuf. Co.*, 313 U.S. 487 (1941) (indicating that a federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits). The applicable choice-of-law rule here depends upon the classification of the case as one sounding in tort or contract. This distinction is important because Kentucky courts utilize a "significant

contact" test for tort cases, but a "most significant relationship" test for contract cases. *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009). Because there is no decision of the Kentucky Supreme Court directly on point, this court must look to other sources to determine how the Kentucky Supreme Court would classify this case. "If the state's highest court has not addressed the issue, the federal court must attempt to ascertain how that court would rule if it were faced with the issue. The Court may use the decisional law of the state's lower courts, other federal courts construing state law, restatements of law, law review commentaries, and other jurisdictions on the 'majority' rule in making this determination." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).

The Kentucky Supreme Court would treat this as a contract case for choice-of-law purposes, resulting in the application of Oklahoma law. Although the underlying accident was indeed a tort, the question here is the allocation of rights under Thompson's contract of employment with Miller. This is an issue of contract law. *See Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1072 (6th Cir. 1983) ("Although the right to recover under workmen's compensation statutes may be triggered by some action sounding in tort, the question of allocation of rights under such laws is generally perceived as a contractual, or at least quasi-contractual, problem").

An examination of other courts' opinions reinforces that the Kentucky Supreme Court would classify this case as one sounding in contract law. Two

federal courts applying Kentucky choice-of-law rules classified identical subrogation claims as contract claims. In addition, the Kentucky Court of Appeals utilized contract principles in resolving a similar subrogation case. Finally, a treatise analyzing Kentucky choice-of-law rules indicates that such claims should be treated as contract claims. Each of these is discussed in more detail below.

In *Harris Corp. v. Comair, Inc.,* the Sixth Circuit held that an employer's subrogation claim against a third party tortfeasor was a contract case governed by the law of the state under which the workers compensation benefits were paid. *Harris* involved an airplane crash in Kentucky that killed, among others, Jeffery Lake. Lake was a resident of Ohio employed by Harris, a Texas corporation. Lake's widow received worker's compensation benefits from Harris under the Ohio Worker's Compensation Act. Harris then sought reimbursement from Comair in Kentucky.

The Sixth Circuit held that the issue was one sounding in contract law and that, under Kentucky choice-of-law principles, Ohio law should apply. "[B]ecause Harris and Lake entered into their employment agreement in Ohio, the laws of that state were implicitly incorporated into the agreement." *Id.* at 1071-72. "Although the right to recover under workmen's compensation statutes may be triggered by some action sounding in tort, the question of allocation of rights under such laws is generally perceived as a contractual, or at least quasi-contractual, problem." *Id.* The court then analyzed which state had the most significant relationship and

determined that Ohio, the state under which the initial benefits were paid, had a greater relationship than Kentucky, the situs of the accident. "To argue otherwise is to confuse the question of negligence, unquestionably an issue to be resolved under the laws of Kentucky, with the question of the rights of the parties under a contract of employment."

CRS's attempts to distinguish *Harris* are unpersuasive. CRS argues that Thompson had more meaningful connections to Kentucky than the employee in *Harris*. However, in both cases, the employee was in Kentucky solely on business for his employer and had no other connections to the state. CRS also argues that Kentucky is the center of the parties' relationship. This argument is misplaced. For one thing, CRS is conflating the place of injury with the center of the parties' relationship. *MacDonald v. General Motors Corp*., 110 F.3d 337, 343 (6th Cir. 1997) (suggesting that the "relationship center" factor requires that the state be more than simply the site of the accident). Furthermore, CRS points to no Kentucky authorities indicating that the "relationship center" is a relevant consideration here. This is unsurprising, given that the factor is borrowed from the Restatement (Second) of Conflict of Laws § 145, which Kentucky has not adopted.

CRS also suggests that *Harris* was rendered void by recent Kentucky decisions affirming the derivative nature of subrogation. This argument likewise fails. Contrary to CRS's suggestion, this principle was established long before *Harris* was decided. *See, e.g., National Biscuit Co. v. Employers Mut. Liability Ins.*

*Co.*, 313 Ky. 305, 308 (1950); *Ford v. Jones*, 174 Ky. 252 (1917). It simply had no bearing on the choice-of-law issue before the Sixth Circuit.

A more recent case from this district confirms that this is a contract case for choice-of-law purposes. *See Bearden v. Beeler*, 2006 WL 1980149 (W.D. Ky., July 11, 2006). *Bearden* involved an accident in Kentucky between individuals from different states. The injured employee received workers compensation benefits from his Georgia employer (Bearden) in Georgia. Bearden then sought reimbursement from the negligent third party. The primary issue was whether Georgia or Kentucky law should apply.

Acknowledging "[t]he proclivity of Kentucky courts to apply Kentucky law whenever possible," the court nonetheless held that Georgia law should apply. The court found that the issue presented was one of contract law and that Kentucky choice-of-law rules pointed to Georgia. According to the court, "the question to be resolved is not one of tort law, but rather is a question of contractual rights. The source of such rights is the employment contract between the injured Plaintiff, a Georgia resident, and his employer, a Georgia corporation. . . While Kentucky is undeniably the situs of the unfortunate accident, the choice-of-law dilemma involves a fundamental question of contract law rather than one of tort law." *Id.* at *4-*5.

In its only relevant decision, the Court of Appeals of Kentucky (then the highest court in Kentucky) suggested that the approach taken in *Harris* and *Bearden*

is proper. *See Employer's Liability Corp. v. Webb,* 140 S.W. 2d 825 (Ky. 1940). *See also Harris*, 712 F.2d at 1072 (summarizing the Court's holding in *Webb*). In *Webb*, the insurer of an Indiana employer whose employee had been injured in Kentucky sued the negligent tortfeasor in Kentucky state court. The defendant argued that the plaintiff insurance company was not entitled to be subrogated to the rights of the employer. The Court held that Indiana law governed the question of subrogation because "the contract of indemnity and the award under the contract were both made in the State of Indiana." *Id.* at 826-27 (noting that because the contract of employment was "made in Indiana. . . it necessarily follows that the compensation law, which is to be read into the contract, should and must control the rights of the parties."). This conclusion was apparently based on the Court's former *lex loci* rule for choice-of-law in contracts cases. *See Breeding v. Massachusetts Indemnity and Life Ins. Co.*, 633 S.W.2d 717 (Ky.1982). Hence, in its only relevant decision, the Court suggested that such subrogation claims are considered contract claims for choice-of-law purposes.

Commentators agree that subrogation claims should be classified as contract cases for choice-of-law purposes. In his treatise *Choice-of-law in Kentucky*, Prof. John R. Leathers acknowledged that "[w]hile it is tempting to look to the fact patterns and wonder whether some Kentucky compensation oriented policy might not be served in some instances by applying Kentucky law, it must be kept in mind that the issue into which the courts are reaching is not directly a result of the

8

underlying tort. Rather the issue arises from the contract now activated by the

Kentucky accident. There is not sufficient Kentucky connection in these cases to

allow application of Kentucky law." Leathers, *Choice-of-law in Kentucky* at 649-50

(*cited in Bearden*, at *6).

Based on all of these sources, this court finds that the Kentucky Supreme

Court would treat this as a contract case. *See Kellman*, 197 F.3d 1178.

As mentioned earlier, Kentucky utilizes a "most significant relationship" test

in contracts cases. Applying this rule to the facts of this case, Oklahoma law

applies. In a factually indistinguishable case, this court had no trouble selecting the

law of the foreign state under which the workers compensation benefits were

distributed. *See Bearden*, 2006 WL 1980149. As here, although the accident

occurred in Kentucky, none of the parties were from Kentucky. Similarly, the

employee in *Bearden* sought and received workers compensation benefits under

another state's (Georgia's) workers compensation statute and never sought them in

Kentucky.[1] *Id.* at *5. Given these facts, the court found Georgia to have the most

significant relationship. *Id.* at *7 ("When the rights at issue, however, arise from an

employment contract executed in a foreign state between a foreign employer and

foreign employee, and those individuals have invoked the workers' compensation

laws of that foreign state, then Kentucky has no interest to assert under such

circumstances.").

---

[1]This fact distinguishes *Bryant v. Jericol Mining, Inc.*, 758 S.W.2d 45 (Ky.
App. 1988), a case cited by CRS.

In this case, Oklahoma has the most significant relationship. Miller is an Oklahoma corporation. Its employment relationship with Thompson was established pursuant to Oklahoma law, and Thompson sought workers compensation benefits under the Oklahoma Workers Compensation Act. Miller was obligated to pay, and did pay, workers compensation benefits to Thompson under Oklahoma law. The Confidential Mediation Agreement, by its terms, was subject to the approval of the Oklahoma Workers Compensation Court, and it was in fact approved by the Oklahoma Workers Compensation Court. In contrast, the only connection to Kentucky is that it was the place of the injury. Oklahoma bears the most significant relationship to this claim.

Strong policy reasons also support utilizing Oklahoma law. "Subrogation rights in the workers compensation situation arise exclusively under the applicable workers compensation act. Because the employer's right to subrogation, if any, is created by statute, the state statute creating the rights should be applied to determine the rights and liabilities thereunder. Application of the statute assures uniform and predictable results and does not allow one party to take advantage of the portion he likes and disregard the portions of which he disapproves." *Miller v. Dorr*, 262 F. Supp. 2d 1233, 1239 (D. Kan. 2003). No such uniformity would result if Kentucky law were applied to Miller's subrogation claim.

Indeed, the policies which favor applying the law of the state under which the benefits were dispersed is so strong that some have indicated it should always

be applied, regardless of the classification of the case or the parties' contacts with other states. According to Prof. Arthur Larson, "As to third-party actions, if compensation has been paid in a foreign state and suit is brought against a third party in the state of injury, the substantive rights of the employee. . . and the employer are ordinarily held governed by the law of the foreign state, although there is contra authority." 2 Larson, *Workman's Compensation*, Damage Suits § 88 (Desk Ed. 1983).[2] Many courts agree that such questions should always be decided under the laws of the state under which the benefits were initially distributed. *See, e.g., Carrick v. Zurich-American Ins. Group*, 14 F.3d 907 (3d Cir. 1994) (interpreting Pennsylvania law); *Miller v. Dorr*, 262 F. Supp. 2d 1233 (D. Kan. 2003); *Brown v. Globe Union, a Div. of Johnson Controls, Inc.*, 694 F. Supp. 795 (D. Colo. 1988); *Langston v. Hayden*, 886 S.W.2d 82 (Mo. Ct. App. W.D. 1994).

## B. Oklahoma Law Permits No Setoff

Having determined that Oklahoma law applies to this case, the court must assess the content of the laws of Oklahoma. Because there is no basis for deducting Thompson's legal fees under Oklahoma law, CRS is not entitled to a set-off. *See* 85 Okla. Stat. Ann. § 44.

---

[2]Section 185 of the Restatement Second, Conflict of Laws, addresses a similar issue. It provides that "the local law of the state under whose workmen's compensation statute an employee has received an award for an injury determines what interest the person who paid the award has in any recovery for tort or wrongful death that the employee may obtain against a third person on account of the same injury."

Under Oklahoma law, Miller is entitled to reimbursement for the amount paid as workers compensation benefits. The relevant Oklahoma statute is 85 Okla. Stat. Ann. § 44. According to the Oklahoma Supreme Court, "Section 44(d) plainly and unambiguously grants to the 'employer'. . . an independent cause of action to recover from a third party tortfeasor the money paid out in death benefits under the Workers' Compensation Act." *McBride v. Grand Island Exp., Inc.*, --- P.3d ----, 2010 WL 5080933 (Okla., Dec. 14, 2010). "Where injuries are caused by a third party's negligence, § 44 is designed to protect the subrogation rights of the employer and his insurance carrier to the full extent of the compensation benefits paid the injured employee, and also to guard against the employee receiving double recovery. . . . The statute was never intended to work to the benefit of the employee or the third party tort-feasor." *Prettyman v. Halliburton Co.*, 841 P.2d 573, 577-78 (Okla.1992). *See also Tomlinson v. Continental Cas. Co.*, 77 P.3d 628, 632-33 (Okla. Civ. App. Div. 3, 2003); *American Agency Systems, Inc. v. Marceleno*, 53 P.3d 929, 934 (Okla. Civ. App. Div. 4, 2002). These cases confirm that Miller is entitled to be fully reimbursed for the workers compensation benefits paid to Thompson under § 44.[3]

### C. Kentucky Law Also Would Not Permit Setoff

---

[3]CRS suggests that even if Oklahoma law applies, tort principles, including comparative fault "would necessarily apply to determine the amount of any judgment owed." R. 23 at 15. Although this argument is flawed, the court need not address it, given that the parties' Joint Stipulation of Relevant Facts states that "[t]he negligence of Defendant Tammie M. Biebel. . . was the sole cause of the injury and death of David Thompson." R. 13, ¶ 1.

Even if Kentucky law were to apply, the fee set-off would be inappropriate. KRS 342.700(1) states, "If compensation is awarded under [the workers compensation] chapter, the employer. . . having paid the compensation or having become liable therefor, may recover. . . from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the injured employee, less the employee's legal fees and expense." Despite the seemingly clear language of the statute, Kentucky courts interpreting this law give it a very different meaning from the one the parties agree on. However, when applying Kentucky law, this court is bound to interpret the statute as the Supreme Court of Kentucky would, not as the parties would like. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); *Rutherford v. Columbia Gas*, 575 F.3d 616, 623-24 (6th Cir. 2009). Therefore, the decisions of the courts of Kentucky recognizing the meaning and purposes of KRS 342.700(1) must be followed.

Kentucky courts have long held that equitable principles allow claimants to set-off legal fees when reimbursing their employer for workers compensation benefits. Prior to the enactment of 342.700(1), when an employee recovered from both his employer (under the workers compensation statute) and a negligent third party, KRS 342.055 gave the employer the ability to recoup benefits paid to the employee. Although much of 342.055 was identical to 342.700, there was no

language dealing with attorney's fees. Nonetheless, a long line of cases required employers to deduct the employee's attorneys fees he spent pursuing the claim against the third party.

The highest court in Kentucky recognized this equitable right as early as 1950. *See Southern Quarries & Contracting Co. v. Hensley*, 232 S.W. 2d 999 (Ky. 1950)*. Later,* the Kentucky Court of Appeals (then the highest court in Kentucky) stated, "This Court. . . has written into the statute an exception as to the extent of the assignment insofar as attorney's fees are involved." *Stacy v. Noble*, 361 S.W. 2d 285 (Ky. 1962). *See also Charles Seligman Co. v. Russel Brown, Ky.*, 360 S.W. 2d 509 (Ky. 1962); *Security Insurance Co. of Hartford v. Norris*. 439 S.W. 2d 68 (Ky. 1969) ("[T]he workmen's compensation carrier properly may be held liable for attorney fees incurred by the injured employe[e] (or a deceased employe[e]'s administrator) in recovering damages from a third-party tortfeasor.").

The rationale behind this rule was clear: courts did not want employers to benefit from the employee's efforts without sharing in the costs. This policy was expressed throughout the decisions interpreting KRS 342.055. In *Noble*, the Court stated, "[I]t would be inequitable to require the employee to bear the attorney fee on that portion of the recovery which KRS 342.055 obliges him to pay over to the employer or its insurer . . . . Equitable principles have been invoked to prevent one from obtaining without cost the fruits of an attorney's labor." 361 S.W.2d at 288-89. In *Norris*, the Court stated that the workers compensation carrier "should bear

the costs of recovery to the extent it redounds to his benefit." 439 S.W. 2d at 70.

This same policy guides Kentucky courts' interpretation of 342.700(1). *See, e.g. Mastin v. Liberal Markets*, 674 S.W.2d 7 (Ky. 1984). *See also Davidson v. Travelers Insurance Co.,* 56 S.W.3d 457, 460 (Ky. 2001) ("[W]here the employee's counsel actually bears the burden of obtaining recovery from a third-party, 'then whoever takes the money is chargeable with a share of the fee.'") (*quoting Noble,* 361 S.W.2d 285); *Wal-Mart Stores, Inc., v. Wells*, --- S.W.3d --- , 2010 WL 566176 (Ky. Ct. App., April 19, 2010); *Brock v. Taylor*, 2007 WL 1521463 (E.D. Ky., May 22, 2007); *Franke v. Air Tech. Indus.,* 2007 WL 61848 (W.D. Ky. Jan. 4, 2007).

This combination of subrogation and fee shifting makes sense. "[T]he employer who was without fault comes out even, the third party who caused the injury pays exactly the damages it would normally pay, and the employee usually get[s] a larger sum for his or her injury than he or she would by proceed[]ing under the Workmen's Compensation Act alone." *Clarendon National Ins. Co. v. Vetor*, 165 S.W.3d 484, 488 (Ky. Ct. App. 2005).

This goal was recently reaffirmed by the Supreme Court of Kentucky in *AIK Selective Self-Insurance Fund v. Minton*. 192 S.W.3d 415, 418 (Ky. 2006). There, an injured employee who had already received worker's compensation benefits sued the negligent third party responsible for his injury. Giving 342.700(1) its "literal and plain meaning," the court held that the employee could deduct the legal fees he

spent prosecuting his claim against the third party from the employer's subrogation credit. The Court interpreted 342.700(1) as embodying the same policy as 342.055. Citing *Noble*, the Court held that "[i]t is only fair to require employers/insurers benefitting from the fruits of such an endeavor to share in its costs." Nowhere did the court indicate that the *third party* was entitled to keep an amount equal to the *employee*'s legal fees.

In light of the interpretation given to KRS 342.700(1) by Kentucky courts, the statute does not apply here. Legal fees are withheld in Kentucky in order to prevent an inequitable windfall for carriers. Miller has not received any such windfall. To that extent, it appears that the purposes of the 342.700(1) set-off would not be furthered by applying it to Miller's recovery from CRS.

Part of the difficulty in applying 342.700(1) to this case is that the Confidential Mediation Agreement does not itemize any of the payments made to Thompson.[4] Consequently, it is difficult to assess precisely who has paid what. Nonetheless, what is clear is that Miller paid $439,441.83 in workers compensation benefits to Thompson, which was approved by the Oklahoma Workers Compensation Court. Further, both CRS and Miller agree that Thompson

---

[4]Another difficulty is that the posture of the parties is different from the majority of cases dealing with workers compensation subrogation. In most cases, the employer seeks reimbursement from the employee to whom it has paid benefits. The exceptional situations most often arise in the context of cross-claims between the employer and the third party, *see Conner v. Dayton Rogers Manuf. Co.*, 377 F. Supp. 937 (E.D. Ky. 1974), and where employers intervene in suits between the employee and the third party. *See Bearden v. Bealer*, 2006 WL 1980149 (W.D. Ky. July, 11, 2006).

owes nothing to either of them. If the goal of 342.700(1) is for "the employer who

was without fault [to] come[] out even, [and] the third party who caused the injury

[to] pay[] exactly the damages it would normally pay," Miller is entitled to recoup

these benefits. *See Vetor*, 165 S.W. 3d at 488. If CRS received a set-off, Miller

would not come out even, and CRS presumably would not pay the damages it

would otherwise pay. *See* R. 28 at ¶ 3; *Vetor*, 165 S.W. 3d at 488.

For these reasons, this court would decline to apply a set-off under

342.700(1) even if Kentucky law applied.

### D. Property Damage

The parties agree that the negligent actions of Biebel caused Miller

$24,990.13 in property damage. *See* R. 13 ¶ 18. Further, Miller does not contest

that Kentucky law should apply to its claim for property damages. Because CRS

has conceded that Biebel was negligent and that she was acting in the scope of her

employment, Miller is entitled to compensation totaling $24, 990.13 for the

property damage resulting from the accident.

### E. Prejudgment Interest

The parties disagree as to whether prejudgment interest is proper and, if so,

which state's laws govern the award of prejudgment interest. Oklahoma law

applies for purposes of awarding prejudgment interest. However, the briefing on

this issue is insufficient for the court to decide the proper rate.

Although the Kentucky Supreme Court has not spoken on this issue, there

17

are strong indications that it would apply the law of Oklahoma in determining prejudgment interest, at least as to the $439,441.83 benefits paid to Thompson. See *Felix v. Lykins Enterprises, Inc.*, --- S.W.3d ---, 2010 WL 4137276 at *5 (Ky. Ct. App., October 22, 2010) ("Kentucky has never addressed this issue directly. However, our Supreme Court said that in a breach of contract claim, prejudgment interest is due as damages, thereby indicating our judiciary's view that prejudgment interest is substantive."). As discussed earlier, this court must apply the choice-of-law rules of Kentucky. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Therefore, because the Kentucky Supreme Court would treat prejudgment interest as substantive, so must this court.

In *Felix,* the Kentucky Court of Appeals was asked to decide whether Kentucky or Ohio law should apply to the award of prejudgment interest in a case otherwise governed by Ohio law. The court held that prejudgment interest was substantive and that Ohio law, which applied to the underlying claim, should apply to the award of interest. 2010 WL 4137276 at *5 ("[T]he majority view among states is that 'prejudgment interest, like the issue of damages, is substantive, and the state whose laws govern the substantive legal questions also governs the question of prejudgment interest.'") (*citations omitted*). *See also Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127, 131 (2d Cir.1984) ("[U]nder New York choice-of-law principles, the allowance of prejudgment interest is controlled by the law of [the state] whose law determined liability on the main claim."). Thus

18

Oklahoma law governs prejudgment interest as to the workers compensation reimbursement.[5]

Miller did not address either the propriety of an award of prejudgment interest under Oklahoma law or the proper rate of prejudgment interest under such law. Instead, it suggested that Kentucky law should govern the award of prejudgment interest, not because Kentucky would classify such an award as procedural, but because Oklahoma would. This argument does not comport with ordinary choice-of-law principles. Because Miller provides no support for its contention that the Kentucky Supreme Court would follow this approach, Miller's argument for an award of prejudgment interest under Kentucky law fails.

Although CRS did argue that Oklahoma law should apply to any award of prejudgment interest, it provided insufficient information for the court to decide this matter. R. 23 at 18. Oklahoma does not appear to have a fixed rate for use in awarding prejudgment interest. *See* 12 Okla. St. Ann. § 727.1 (indicating that the rate should be calculated using the prime rate as published in the Wall Street Journal on a date twenty four months after the commencement of suit, plus two percent). In light of the variable nature of prejudgment interest under Oklahoma law, the court will allow the parties an opportunity to further address this issue.

### III. Conclusion

---

[5]Because the property damage claim is governed by Kentucky law, the prejudgment interest on this award would be governed by Kentucky law as well.

Miller is entitled under Oklahoma law to reimbursement from CRS for the workers compensation benefits paid to Thompson. Accordingly, Miller's motion for summary judgment (R. 15) is **GRANTED** insofar as it requests reimbursement for the $439,441.83 paid to Thompson and reimbursement for property damage.

Because this court determines that Oklahoma law applies to the award of prejudgment interest on Miller's reimbursement claim, but the parties have not adequately addressed the proper rate under Oklahoma law, **IT IS FURTHER ORDERED** that the parties shall file supplemental briefing addressing the appropriate rate of interest on that claim. These briefs shall also address the propriety of an award of prejudgment interest on Miller's claim for property damage. The briefs shall be limited to ten (10) pages, and shall be filed according to the following schedule: No later than April 15, Miller shall file a motion for prejudgment interest. Response and reply times shall run in accordance with the Local Rules.

**IT IS FURTHER ORDERED** that CRS's Motion for Summary Judgment (R. 16) is **DENIED**.

Signed on  March 17, 2011

*Jennifer B Coffman*

**Jennifer B. Coffman, Judge**
**United States District Court**